The next case, call for an argument in re the Matter of Koehler. I'm sorry. I did. Eager to run right. We did. We did have an empty seat. This is in re the Matter of Koehler versus Koehler. Counsel. Thank you, Your Honor. May it please the court. My name is Daniel Cochran, and I represent the appellate in this case, Robert Taylor. Your Honor, this court should reverse the decision of the trial court and dismiss the granting of the plenary order of protection against my client as it was against the manifest way of the evidence. Your Honor, the standard of proof to obtain an order of protection is proved by the preponderance of the evidence. When a trial court makes such a finding, this finding should only be reversed if it is against the manifest way of the evidence. If a finding is against the manifest way of the evidence, the opposite conclusion is clearly evident, and the finding is unreasonable, arbitrary, or not based on the evidence presented. Your Honor, in this case, each of these elements are true, as well as a misuse of the Domestic Violence Act in an attempt to improperly modify the evidence presented. Your Honor, the purpose of the Domestic Violence Act is to aid victims of domestic violence and prevent further abuse, not resolve issues of hesitation in custody, as was stated by the 3rd District in Wilson v. Jackson. The 3rd District further stated in that case that misuse of the Domestic Violence Act by using it to modify custody, even when the alleged actions may have constituted abuse, warrants reversal of the plenary order of protection. Your Honor, this case represents the dangers that was warned of in Wilson v. Jackson in that the Domestic Violence Act is meant to prevent abuse, not to take a situation where there may be some abuse. But the primary purpose is to modify custody when one party is unhappy with an arrangement. In Wilson v. Jackson, Petitioner was the putative father of the minor child, and the respondent was the child's mother. Prior to the child's birth, the father had visited with the mother, the respondent in that case, and when he refused to leave at one point, Petitioner refused to leave. At one point, she assaulted him physically to get him to remove himself from her residence. Again, after the child was born, Petitioner visited with the mother and the child, and at that point, again, there was a dispute between the mother and father. It became heated, and the respondent, again, became combative and physically, as the records state in that case, jerked the child from the Petitioner's hands in that case. In that instance, the Petitioner had visitation a subsequent time, and as soon as he had the child in his possession, he immediately filed for an ex parte order of protection in that case and obtained an ex parte. It was then later granted a plenary order of protection in that case. However, the Third District reversed that decision based on the fact that the order of protection was apparent. Petitioner was attempting to gain custody instead of preventing abuse in that case. Your Honor, in this case, we have a similar situation where the plaintiff is attempting to gain custody of a child through the use of the Domestic Violence Act. The verified petition for order of protection in this case made accusations of bruising on one of the party's two minor children, also made a vague allegation that the defendant had pointed a gun at her at one point, and then followed by a lengthy allegation of visitation disputes and problems the parties were having with visitation. When a hearing was held on August 28, 2009 for the plenary order of protection, several inconsistencies appeared from the face of the Petitioner as to the allegations, indicating the true nature of this cause was the modification of custody and not a prevention of abuse towards the children or towards the Petitioner in this case. The first issue was the accusation of abuse as to only one of the two minor children. This single incident was occurred when Hunter Drew Caylor, the older of the two minor children, could be described as nothing more than reasonable direction of a child. Pursuant to 750 ILCS 60-103, abuse means physical abuse, harassment, intimidation of a dependent, interference with personal liberty, or willful deprivation, but does not include reasonable direction of a minor child by a parent. This definition was reinforced by the Third District in Radke v. Radke when the appellate court stated domestic violence definition of abuse does not include reasonable direction of a child by a parent. In that case, a father was receiving visitation with his daughter. While she was there, they got into a dispute, at which point the father struck the child. He also removed the phone cord from the wall to prevent her from calling in the police or her mother as she stated she was trying to do. He also forcibly brought her back into the home when she attempted to leave to go back to her mother's during the father's visitation period. This was found to be reasonable direction of a child. In this case, Hunter testified at the plenary of the protection hearing. In his testimony, he stated that he was playing on the computer. When his father told him his time was up and it was time to stop playing on the computer, he refused. At that point, his father smacked him on the leg with his hand. Officer Leach, who inspected Hunter after this incident, testified Hunter told him this was the only time his father had ever struck him and that it didn't hurt. Hunter testified he was not harmed by the smack to his leg, and it was all a result of disobeying his father. His father was regretting him for disobeying his instructions. The petitioner also testified the defendant has never threatened his children in any way. There was not evidence of any other instance where the father had even used corporal punishment, which as far as I'm aware is still legal in the state of Illinois. I believe it was used regularly throughout my childhood and many people I know and many generations. In this case, the testimony of the plaintiff, Officer Leach, and Hunter all indicate the child was reasonably directed by the smack to the leg. He disobeyed his father and took a smack to the leg, which left two minor points on his leg that Officer Leach testified would not show up in the pictures and looked more like bug bites. So we're not talking about a bruise across this kid's back from a belt strike. His father smacked him on the leg for disobeying. The child understood that and was directed not to disobey his father's program. And also, as there were absolutely no allegations of any abuse towards the other child and only this single minor incident, there was absolutely no factual basis to find that my client was in any way a danger to his children, either present or future. This brings us to the true issue of the Petitioner's College Orders, which was to modify the custody of the children. The plaintiff made a very lengthy allegation in the Petition for Order of Protection regarding the defendant allowing his parents to take the children on vacation to Gulf Shores, Alabama. Coincidentally, these proceedings were instituted three days after the children returned from Alabama on August 1, 2009. The more serious allegations regarding my client brandishing a firearm at one point in time, an incident allegedly occurred on February 28, 2009, at a birthday party at my client's parents' house. The petitioner testified that my client brought out a firearm when a confrontation occurred between herself and himself. However, both my client and his mother testified that the petitioner was, in fact, the person who had a firearm in her purse and was attempting to remove it from the home when it was taken back as it was the property of the petitioner and his family. The second incident made regard in June 2009 supposedly was witnessed by a number of other individuals who the petitioner did not bring to testify. She made allegations that the minor children overheard much of the argument and what happened, yet Hunter Taylor testified he didn't hear any of these things. He didn't testify to being afraid or fearful. None of these issues came about. However, other than that, both the petitioner and her mother testified at length about the visitation problems between the petitioner and my client. This whole case, almost every fact that was discussed, revolved around some type of dispute with visitation in this case. The facts of this case show a very different story from what the petitioner alleged in her petition. She was never afraid of my client. She was never concerned for her safety. After the first incident with the alleged firearm in February, in May of 2009, she voluntarily transferred custody of the older child, Hunter, to my client. However, we then have some visitation disputes after that problem, all culminating in this Gulf Shores, Alabama trip with my client's parents, and this turns into an order of protection file. I would also have the court note that this case was originally filed in Jackson County instead of Johnson County, where there was already a pending family case regarding these parties in this issue. The petitioner never alleged that the defendant was a threat to her children or a future harm. We have one incident where a child was smacked on the leg for disobeying his father. If only things would have been so easy when I was growing up, it might not have been so bad. In this case, the graining of the point of order of protection was against the defendant, could not have been based on the evidence, and was nothing more than arbitrary at best. It is evident the plaintiff was trying to modify custody improperly instead of using the proper channels in a family case or a divorce case. This case is analogous to Wilson v. Jackson, and based on that decision, even if the allegations may have constituted abuse under the act, the improper use of the petition to modify custody warrants reversal. Your Honor, in this case, as there was no evidence that my client would abuse his children or was a threat of future abuse, it should be dismissed as the children and as the petitioner that this plenary graining should be reversed and the point of order of protection should be dismissed if she improperly used the Domestic Violence Act as a mode of modifying custody, which is prohibited by the Third District of Wilson v. Jackson, warrants reversal. Thank you.